3S3

ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 02 CV 73518 |
| | ) | |
| v. | ) | Judge Victoria A. Roberts |
| | ) | Magistrate Judge Scheer |
| EDWARD ROSE & SONS, et al., | ) | |
| | ) | **CONSENT ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FILED**

SEP 3 0 2005

CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

## I.     INTRODUCTION

1.     This Consent Order is entered among the United States of America, the Rose

Companies[1] and the Architectural Defendants,[2] (collectively referred to herein as "the Parties")[3] to

resolve two lawsuits brought by the United States to enforce the provisions of Title VIII of the

Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, ("Fair

---

[1] For purposes of this Consent Order, "the Rose Companies" refers to:  Edward Rose & Associates, Inc., a Michigan corporation; Edward Rose of Indiana, L.L.C., an Indiana limited liability company (formerly Edward Rose of Indiana, L.P., an Indiana limited partnership); Edward Rose Assoc., L.L.C., a Michigan limited liability company;  Edward Rose Development Co., L.L.C., a Michigan limited liability company; Edward Rose Realty, Inc., a Michigan corporation; Occidental Development, L.L.C., a Michigan limited liability company (formerly Occidental Development Ltd, a Michigan limited partnership); Huron Development, L.L.C., a Michigan limited liability company (formerly, Huron Development Limited Partnership, a Michigan-chartered limited partnership).

[2] For purposes of this Consent Order, "the Architectural Defendants" refers to: Dorchen/Martin Associates, Inc.; Eckert/Wordell Architects P.C.; Alexander V. Bogaerts & Associates P.C.; SSOE, Inc.; Gerald Peterson; and James R. Saule.

[3] For purposes of this Consent Order, "Defendants" refers to the Rose Companies and the Architectural Defendants.

Housing Act"), 42 U.S.C. §§ 3601-3619, and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189.

2.    On January 18, 2001, and September 3, 2002, the United States filed civil actions in the United States District Courts for the Northern District of Indiana, Case No. 3:01cv00040 (N.D. Ind.) ("Indiana Action") and the Eastern District of Michigan, Case No. 02-CV-73518 (E.D. Mich.) ("Michigan Action"), respectively (hereinafter "the civil actions" or "these actions"). These actions, as amended, allege that the Rose Companies and the Architectural Defendants discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings and places of public accommodation in accordance with the features of accessible and adaptable design and construction required by subsection 804(f)(3)(C) of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C), and the Americans with Disabilities Act, 42 U.S.C. § 12183(a)(1). The United States also alleges in the Michigan Action that certain of the Rose Companies: discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of handicap, in violation of 42 U.S.C. § 3604(f)(1); discriminated against persons in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2); denied reasonable accommodations to persons with disabilities in violation of 42 U.S.C. § 3604(f)(3)(B); and misrepresented the availability of dwellings for rental by persons with disabilities, in violation of 42 U.S.C. § 3604(d). The United States alleges that the above conduct on the part of the Defendants constituted a pattern or practice of discrimination against persons with disabilities and a denial of rights to a group of persons with disabilities that raised an issue of general public importance.

3.    On February 21, 2003, the United States District Court for the Eastern District of Michigan enjoined certain of the Rose Companies from proceeding with the construction and occupancy of nineteen (19) apartment buildings at two (2) complexes where the buildings, as designed, would have had descending steps to the entrances to the covered dwelling units directly across from the parking lot and the only accessible way into the covered dwelling units would have been by way of a walk around the opposite side of the building and through the patio doors. See United States v. Edward Rose & Sons, 246 F. Supp. 2d 744 (E.D. Mich. 2003).

4.    On August 25, 2004, the United States Court of Appeals for the Sixth Circuit affirmed the district court's entry of a preliminary injunction. See United States v. Edward Rose & Sons, 384 F.3d 258 (6th Cir. 2004). The Court of Appeals denied the Rose Companies' Petition for Rehearing En Banc on December 7, 2004.

5.    The Defendants have answered the complaints in the Michigan Action and the Indiana Action denying any and all alleged violations of either the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. or the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. The Defendants continue to deny any and all liability in these actions and nothing in this Consent Order shall be construed as an admission of liability by any of the Defendants.

6.    In an effort to avoid further contested litigation, the Parties agree that the controversy should be resolved without further proceedings and without an evidentiary hearing or findings of fact. This Consent Order constitutes a full and final resolution of all claims of violation of the Fair Housing Act and the ADA that the United States alleged, or could have alleged, in these actions relating to disabilities, mobility impairments, and/or handicaps arising out of the

3

Defendants' design, construction, ownership and/or operation of the Subject Properties[4] (collectively referred to as the "Claims"). The United States therefore irrevocably waives any claims it may have to pursue relief against the Defendants, collectively and individually, and each of their officers, employees, agents, directors, members, managers, shareholders, parents, subsidiaries, successors and assigns, and all other persons in active concert or participation with them, relating to the Claims, except for matters referred by HUD pursuant to 42 U.S.C. § 3612(o) and proceedings to enforce the provisions of this Consent Order. This Paragraph shall survive the expiration of this Consent Order.

     7.    Contemporaneously with the submission of this Consent Order, the Parties have stipulated to the transfer, pursuant to 28 U.S.C. §1404(a), of the United States' claims against the Rose Companies and the Architectural Defendants (except for claims against Gary Weaver) in the Indiana Action to this Court. The Parties agree that this Court now has jurisdiction over the subject matter of both the Indiana and Michigan Actions pursuant to 28 U.S.C. §§ 1404(a) and 1345, and 42 U.S.C. § 3614(a).[5]

     8.    The complaints in these cases (except for claims against Gary Weaver) are hereby dismissed with prejudice. This Court, however, shall retain jurisdiction to enforce the terms of this Consent Order for the term of this Consent Order. The provisions of this Consent Order shall supersede the terms of the Preliminary Injunction entered in the Michigan Action and, upon entry of this Order, such injunction is no longer in effect.

---

[4] For purposes of this Consent Order, the term "Subject Properties" means each of the apartment complexes listed in Appendix A.

[5] The United States' claims against Gary Weaver cannot be transferred pursuant to 28 U.S.C. § 1404(a) because this Court lacks personal jurisdiction over Gary Weaver. The claims against Gary Weaver shall be disposed of by separate proceedings or consent order in the Indiana Action.

9.     Accordingly, as indicated by the signatures appearing below, the Parties agree to and request entry of this Consent Order.

**It is hereby ADJUDGED, ORDERED and DECREED that:**

## II.     GENERAL INJUNCTION

10.     Defendants, and each of their officers, employees, agents, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability, as prohibited by the Fair Housing Act, 42 U.S.C. §3604(f)(1)-(3), and the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

## III.     FUTURE CONSTRUCTION

11.     Defendants shall take the actions set forth herein to ensure that that all future design and/or construction of covered multifamily dwellings by the Rose Companies and/or the Architectural Defendants shall comply with the design and construction requirements of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(3), and, where applicable, the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

12.     The Rose Companies will design and construct the buildings that were subject to the preliminary injunction entered in the Michigan Action  (Buildings 7-10 at Westlake Apartments and Building 9-15 at Lake Pointe Apartments) with accessible at-grade entrances facing the parking lot of the buildings, except for Lake Pointe Buildings 4, 5, 6, 7 and 8 and Westlake Apartments Buildings 11, 12 and 13, which shall be constructed in accordance with Appendix C-18 and Appendix C-41, respectively.

13.     The Rose Companies will design and construct all other future covered multifamily dwelling units with accessible at-grade entrances facing the primary parking lot of the buildings, except where future site conditions render such construction impractical (see 56 Fed. Reg. 9503-

5

9504 (Mar. 6, 1991)), provided that the Rose Companies will inform the United States where they intend to claim site impracticality within 30 days following the site impracticality analysis and prior to start of construction, and will provide the United States with the non-privileged documentation supporting their analysis.[6]

14.    The Rose Companies will maintain, and provide to the United States the following information and statements regarding any covered multifamily dwellings intended to be developed, built, and/or designed, in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, manager, or have a ten percent (10%) or larger ownership share. The Rose Companies shall provide the following information/statements pursuant to the reporting provisions of Section XII(C) of this Consent Order:

(a)    The name and address of the project;

(b)    A description of the project and the individual units;

(c)    The name, address, and telephone number of the architect(s) involved with the project.

In addition, the Rose Companies shall obtain a statement from the architect(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act and the ADA in the field of accessible building and housing design and stating that he/she has reviewed the architectural plans for the project and that to the best of his/her professional judgment, knowledge and belief, the design specifications therein comply with the requirements of the Fair Housing Act, and, where applicable, the ADA and the ADA Standards for Accessible Design. The Rose Companies can satisfy this requirement by including such a statement in the contract with the architect, and by requiring that the architect execute that contract.

---

[6] In the case of The Enclave, the Rose Companies will provide all non-privileged documentation supporting their analysis within 30 days following the entry of this Consent Order.

15. If the Architectural Defendants prepare any architectural plans, drawings or blueprints for covered multifamily housing, they shall include on such plans, drawings or blueprints a statement that to the best of his/her professional judgment, knowledge and belief the design specifications therein comply with the Fair Housing Act, and, where applicable, the ADA and the ADA Standards for Accessible Design. The Architectural Defendants shall, upon request, provide to the United States a list of all such multifamily housing that they have designed during the term of this Consent Order.

## IV. MODIFICATIONS AND OTHER ACTIONS AT THE SUBJECT PROPERTIES

16. While denying liability, the Rose Companies agree to complete the actions described in this Section IV[7] for buildings located within the Subject Properties that are covered by the Fair Housing Act or the ADA:[8]

### A. Public and Common Use Areas/Special Requests

17. In accordance with the schedule set forth in Appendix B, the Rose Companies shall complete the modifications to the public and common use areas at the Subject Properties as set forth in Appendix C (Appendices C-1 through C-41, Parts I, II and III).

18. Upon the request of a tenant with a mobility impairment who lives in a Covered Dwelling Unit at one of the Subject Properties and who uses his or her patio door as the primary

---

[7] Each of the Architectural Defendants designed one or more of the Subject Properties. The extent of each Architectural Defendants' involvement in the design of covered dwellings at the Subject Properties is set forth in Appendix D. However, the Rose Companies shall be solely responsible for completing the modifications required by this Order and shall pay all expenses associated with modifications. Nothing in this Order shall preclude the Rose Companies from recouping all or any portion of the expenses from one or more of the Architectural Defendants by separate agreement or by initiating separate actions.

[8] The buildings within each of the Subject Properties that are covered by the Fair Housing Act or the ADA are those that are so identified in Appendices C-1 through C-41 and in Appendix E. Hereinafter the phrase "Covered Dwelling Unit(s)" shall mean ground floor dwelling unit(s) covered by the FHA that are located within one of the Subject Properties.

7

accessible entrance, the Rose Companies will replace the sliding glass door with a swinging door at no expense to the tenant. The Rose Companies will install the swinging door as promptly as is practical, but in any event no later than thirty (30) days after receipt of such a request.

19.     For those buildings covered by the FHA at the Subject Properties where the entrance closest to the parking lot can be accessed only by going down steps and the patio door is at grade, the Rose Companies and/or their employees, agents, contractors, or other persons in active concert or participation with them will clear snow and/or ice from the routes to the patios on the same schedule as the routes to the parking-lot-side entrances, with priority given to tenants with mobility impairments who use their patio door as their primary entrance.

20.     In addition to the van-accessible parking spaces for properties identified in Appendices C-1 through C-41, and subject to the restrictions set forth therein, upon the request of a tenant with a mobility impairment living in a Covered Dwelling Unit at one of the Subject Properties who uses his or her patio door as the primary accessible entrance, the Rose Companies will provide a reserved van-accessible parking space at no expense to the tenant; provided, however, that (a) the tenant has a handicapped or disabled parking permit; (b) the Rose Companies are not required to construct any additional ramps or curb-cuts in granting the request; and (c) the addition of the van-accessible parking space will not cause the Rose Companies to be in violation of local or regional ordinances or other laws mandating a minimum number of parking spaces; provided, however that the Rose Companies advise counsel for the United States, in writing, of such instances. The Rose Companies will provide the van-accessible parking space as promptly as is practical, and, in any event, will provide the reserved parking space to the tenant no later than thirty (30) days of receipt of such a request.

8

21.     Upon request of a tenant with a mobility impairment living in a Covered Dwelling Unit at one of the Subject Properties who wishes to lease a carport space, the Rose Companies will provide two carport spaces for the same cost as a single carport space so that the tenant has an accessible parking space and access aisle, provided that the building in which the tenant lives has carports available and that the tenant has a handicapped or disabled parking permit.  If two carport spaces are not available at the building in which the tenant lives, the Rose Companies will provide two carport spaces for the tenant at the closest available building location for the same cost as a single carport space.  If two spaces are not available at the property, the Rose Companies will provide such spaces for the tenant as soon as two carport spaces become available.  In such circumstances, the Rose Companies shall make reasonable efforts to allocate available carport spaces so that two are adjacent to each other and, in any event, will make two carport spaces available to the tenant as soon as they become available at one building.  In no circumstance will a tenant with a mobility impairment living in a Covered Dwelling Unit at one of the Subject Properties lose his or her place on a carport waiting list.

22.     For Covered Dwelling Units at the Subject Properties, the Rose Companies will provide accessible trash dumpsters on an accessible route, or, where such dumpsters are not provided or where the parking lot side entrance is not at grade, will, upon request of a tenant with a mobility impairment living in a Covered Dwelling Unit, pick up that tenant's trash from the unit at reasonable intervals at no expense to the tenant.

23.     Upon request of a tenant with a mobility impairment living in a Covered Dwelling Unit at one of the Subject Properties who uses his or her patio door as the primary accessible entrance, the Rose Companies will, at their option and subject to the approval of the U.S. Postal Service, either (i) install a mailbox at an accessible location and make alternate delivery

9

arrangements with the U.S. Postal Service; or (ii) install a mail slot with a basket in the entrance door. The United States and the Rose Companies anticipate that the U.S. Postal Service will approve one of the two options listed above. However, in the event that the U.S. Postal Service does not approve either of the options listed above, the United States and the Rose Companies will endeavor in good faith to find a mutually agreeable alternate solution. If the United States and the Rose Companies cannot reach an agreement, the matter will be resolved in accordance with the dispute resolution procedure set forth in Section XIII(C) of this Consent Order.

24. To the extent that the Rose Companies maintain one or more model units that is representative of a unit type that is offered on the ground floor at any of the Subject Properties, at least one model unit for that unit type shall be on the ground floor at each Subject Property.

## B. Retrofits to Interiors of Covered Dwelling Units at the Subject Properties

25. In accordance with the schedule set forth in Appendix B, the Rose Companies shall commence and finish the retrofits to the interior of the Covered Dwelling Units at the Subject Properties that are set forth in Appendices C-1 through C-41.[9] In connection therewith, the Rose Companies shall take each of the following actions:

(a) Within ninety (90) days after the entry of this Consent Order, the Rose Companies shall send or deliver written notice (the template for which is set forth in Appendix

---

[9] The Rose Companies' obligations with respect to retrofitting dwelling interiors at each complex are set forth in Parts I and IV of each appendix. The modifications set forth in Appendices C-1 through C-41 are based on measurements taken by experts retained by the Parties. The United States understands that the dwellings made available to the experts were representative of all Covered Dwellings Units at each particular complex. If it is later determined that this understanding is not correct, and that other modifications are needed, the United States and the Rose Companies will endeavor in good faith to agree on what the additional modifications will be, consistent with the modifications the Parties have agreed to in Appendices C-1 through C-41. If the United States and the Rose Companies cannot reach agreement on the retrofits to be performed, the matter shall be resolved pursuant to the dispute resolution provisions set forth in Section XIII(C) of this Consent Order.

F) to current tenants living in Covered Dwelling Units that require retrofits according to Appendices C-1 through C-41. If the tenant chooses to have any of the retrofits made, he/she must agree to have all the required retrofits performed at that time. The retrofits shall be completed as promptly as practical, but in any event, not later than sixty (60) days following the receipt of the written request, subject to documented circumstances outside the control of the Rose Companies.

(b)    The Rose Companies shall include a provision in all new leases or lease renewals specifying that the present owner of the Subject Properties will have the right to modify the unit to bring it into compliance with the provisions of this Consent Order.

(c)    In the event that a tenant living in a Covered Dwelling Unit that is scheduled to undergo a modification incurs undue inconvenience or hardship (defined as a required dislocation from the unit for more than 24 hours consecutively), the Rose Companies shall pay such tenant the applicable government per diem rate for food and lodging for the local area for each day of undue inconvenience or hardship. Such payment shall be made prior to the commencement of any modification work on the tenant's unit, so that the tenant can use the money to obtain alternative living accommodations while dislocated. In the alternative, at their option, the Rose Companies may provide the tenant with a furnished guest suite at the Subject Property at which the tenant resides at no cost to the tenant.

(d)    The Rose Companies may not charge any additional rent, deposit or other fee for a unit solely because the modifications in Appendices C-1 through C-41 or the

accessibility enhancements specified in Sections IV(C) or IV(D) are contemplated or completed.

26.     Upon request of a tenant with a mobility impairment who lives in a Covered Dwelling Unit at a Subject Property, who wishes to have grab bars installed in his or her unit, the Rose Companies will install grab bars either (i) at locations set forth in the Fair Housing Act Accessibility Guidelines, 56 Fed. Reg. 9511; or (ii) in an alternate location if so specified in writing by the tenant making the request for grab bars.  The Rose Companies will install such grab bars as promptly as is practical, but in any event no later than thirty (30) days after receipt of such a request.  In bathrooms where the toilet is more than 20 inches from the side wall, the Rose Companies will also, on request, add blocking to decrease the distance between the toilet and the mounted grab bar.

## C.     Required Additional Accessibility Features in Specified Covered Dwelling Units

27.     In accordance with the limitations set forth in Appendices C-1 through C-41 and the schedules set forth in Appendix B, the Rose Companies shall complete the modifications of the specified ground floor units at the Subject Properties so that they contain the additional accessible features listed below.  The Rose Companies, in their sole discretion, shall select which units are to be modified for each phase of the retrofit schedule in Appendix B, except that none of the selected units shall be those that are already designated as Michigan PH units.  The additional accessible features required in each specified unit (unless otherwise specified in the relevant appendix) are identified below.  Where the accessibility enhancement can be achieved in alternative ways (*i.e.* subparagraphs (a), (b), (g), and (l) below), the Rose Companies, in their sole discretion, shall select the alternative to be used in each unit.

12

(a)   Either removable cabinetry under the kitchen sink and/or bathroom lavatory or installation of replacement fixtures or lavatories, such that a person using a wheelchair can make a full forward approach to the sink or lavatory, or provide a 30 by 48 inch clear floor space centered on the sink or lavatory for a parallel approach. (In the case of units with two bathrooms, one bathroom shall be modified or constructed to meet the modifications set forth herein);

(b)   Either removable oven units such that a person using a wheelchair can make a full forward approach to the cook top plus the provision of a separate oven appliance (e.g., convection oven) or the alternative redesign of kitchen cabinetry placement or removable cabinetry to allow a parallel approach to the range;

(c)   At least one Specification "B" Accessible Bathroom complying with Fair Housing Act Guidelines Req. 7(2)(b) will be provided;

(d)   The installation of lever door hardware throughout the unit;

(e)   The installation of lever controls on faucets;

(f)   Cooktop and oven controls located at the front of the range;

(g)   The installation of a wand shower head on flexible tube or an adjustable height shower head;

(h)   The installation of a self-cleaning oven;

(i)   The creation of a 30 inch kitchen work space and lowering counters at sink and work space to 34 inches above finished floor, except for "U-shaped" and "L-shaped kitchens";

(j)   The installation of anti-scald valves in shower;

(k)     The installation of U-shaped pulls near hinges on exterior of door at parking lot side of building, except where doors have self-closing hinges;

(l)     Replace existing thermostats with electronic thermostats with large numbers and push buttons to adjust and/or remote thermostat control;

(m)    Install doors that are at least 36 inches wide or, where any existing Covered Dwelling Unit is being modified, off-set or swing-clear hinges on one or more doors in the units to allow more clear width (beyond the nominal 32 inches that is provided in the absence of the swing-clear or off-set hinges) for the passage of wide wheelchairs or for other persons with mobility impairments who require additional maneuvering space based upon his/her mobility impairment;

(n)     Replace electric flip switch with rocker switch operable with push;

(o)     Install strobe light alarms for smoke detector and visual doorbell indicator (where a doorbell exists);

(p)     Install additional lower hanging rods and shelves in the closet;

(q)     Install full height mirror in bathroom or bedroom;

(r)     Install pull-out shelves in the cabinets and/or closets; and

(s)     Provide a refrigerator/freezer that complies with 1986 ANSI 4.32.5.8.

28.     As the modifications to the units described in Paragraph 27, above, are completed, the units shall be made available to current, future and prospective tenants on a first-come, first-served basis. The Rose Companies shall notify current tenants of the availability of these units by sending written information (the template for which is set forth in Appendix G) to current tenants living in a Covered Dwelling Unit at one of the Subject Properties. If a tenant with a mobility impairment expresses an interest in moving into a unit with additional accessibility features

14

identified in Paragraph 27, above, the Rose Companies will pay any and all reasonable out-of-pocket moving costs associated with or provide any and all moving services for that tenant's move from a Covered Dwelling Unit at one of the Subject Properties to a unit with additional accessibility features located within the same property. The Rose Companies shall notify future and prospective tenants of the availability of these units by providing written information (the template for which is set forth in Appendix H) to all prospective tenants inquiring about moving into one of the Subject Properties if the prospective tenant asks for information about the dwelling unit to be mailed to him or her, or if he or she appears in person at the Subject Property.

### D. "On Request" Accessibility Features

29. The Rose Companies shall make, at their expense, any of the following accessibility enhancements that are requested by a current, prospective or future tenant with a mobility impairment living in, or moving into, a Covered Dwelling Unit at one of the Subject Properties, subject to the limitations set forth in the relevant appendix and subject to the procedures set forth in Paragraphs 30-31, below. Nothing in this Section shall be interpreted as requiring the Rose Companies to make such accessibility enhancements for any prospective tenants unless and until that prospective tenant signs a lease with the Rose Companies.

(a) Removable cabinetry in kitchens and/or bathrooms (and finish flooring and insulate pipes), or replacement of fixtures or lavatories, to increase maneuvering space and allow a full forward approach or a parallel approach to kitchen sink, range, oven, or bathroom lavatory;

(b) Provide range with cook top and oven controls located at front of the range;

(c) Install roll-in shower;

(d) Install a taller accessible toilet or a raised toilet seat;

15

(e)     Replace knob hardware with levered hardware;

(f)     Install lever controls on faucets;

(g)     Replace shower head with wand shower head on flex tube or adjustable shower head;

(h)     Install anti-scald valves in shower;

(i)     Install U-shaped pulls near hinges on exterior of door at parking side of building, except where doors have self-closing hinges;

(j)     Replace existing thermostats with electronic thermostats with large numbers and push buttons to adjust and/or remote thermostat control;

(k)     Install at parking side entrance door an additional "fish-eye peep hole" or "wide view peephole" at tenant's preferred height;

(l)     Install off-set or swing clear door hinges and/or remove trim or molding to increase clear width at doors or doorways for doors with less than a nominal 32-inch clearance, or to allow more clear width (beyond the nominal 32 inches that is provided in the absence of the swing-clear or off-set hinges) for the passage of wide wheelchairs or for other persons with mobility impairments who require additional maneuvering space based upon his/her mobility impairment;

(m)     Replace electric flip switch with rocker switch operable with push or with a toggle switch;

(n)     Install strobe light alarms for smoke detector and visual doorbell indicator (where a doorbell exists);

(o)     Install additional lower hanging rods and shelves in the closet;

(p)     Install full height mirror in bathroom or bedroom;

16

(q)     Install pull-out shelves in the cabinets and/or closets;

(r)     Pull out refrigerator from the wall and place it facing forward to improve access or install smaller refrigerator to increase clearance between the refrigerator and the opposing wall;

(s)     Install a self-cleaning oven;

(t)     Install URL extenders to improve access to outlets;

(u)     Within the existing space for laundry facilities, rearrange or move washer/dryer to increase access through laundry/utility room and access to washer/dryer; provided, however, that it does not require the relocation of existing infrastructure, installation of new plumbing supplies, drains, electrical wiring, exhaust venting and/or compromise any other code requirements for such installations, although it may require replacing or updating existing hoses or other minor connections, to facilitate moving the laundry equipment within the existing space;

(v)     Install grab bars surrounding the bathing and toilet areas.

Where the accessibility enhancements can be achieved in alternative ways (*i.e.*, (a), (d), (g), (j), (l), (m), and (r)), the Rose Companies, in their sole discretion, shall select the alternative to be used in each unit, unless a particular alternative or combination of alternatives is reasonably necessary to accommodate the needs of the tenant based upon his/her mobility impairment.

30.     The Rose Companies shall notify current tenants of the availability of these accessibility enhancements by sending written information (the template for which is set forth in Appendix I) to current tenants living in a Covered Dwelling Unit at one of the Subject Properties. The Rose Companies shall notify future and prospective tenants of the availability of these accessibility enhancements by providing written information (the template for which is set forth in

Appendix H) to all prospective tenants inquiring about moving into one of the Subject Properties if the prospective tenant asks for information about the dwelling unit to be mailed to him or her, or if he or she appears in person at the Subject Property.

31.     Provided the individual qualifies for one or more enhancements based upon that individual's mobility impairment or other relevant disability, the Rose Companies will grant the request for enhancement(s). The "on request" enhancements described in Paragraph 29 will be completed as soon as is practical, but in any event, within sixty (60) days of the date the request is received in writing, subject to documented circumstances outside the control of the Rose Companies.

### E.     Notification to Current Tenants

32.     Within ninety (90) days after the entry of this Consent Order, the Rose Companies will provide the written information described in Paragraph 30, above, to current tenants in Covered Dwelling Units.

### F.     Written Confirmation of Requests for Accessibility Enhancement Features

33.     The Rose Companies may require the current or prospective tenant to make or confirm requests for the accessibility enhancement features described in Paragraph Nos. 18, 19, 20, 21, 22, 23, 26 and 29, in writing using a form appropriate for each complex, the template for which is attached hereto as Appendix J. The Rose Companies may require the current or prospective tenant to submit appropriate information and documentation under circumstances and in a manner that is consistent with paragraphs 12-13 of the guidance set forth in the May 14, 2004 Joint Statement of the Department of Housing and Urban Development and the Department of Justice regarding Reasonable Accommodations under the Fair Housing Act.

18

## V.    INSPECTION AND CERTIFICATION OF COMPLETED RETROFITS

34.    The Rose Companies shall arrange to have neutral inspectors ("Inspectors") approved by the United States, whose approval shall not be withheld unreasonably (provided that Inspectors may be removed from future inspections upon mutual agreement of the Rose Companies and the United States), to conduct on-site inspections of the modifications that have been performed under this Consent Order to determine if they have been completed in accordance with the specifications set forth in Appendices C-1 through C-41.  The inspections shall take place within thirty (30) days of the date that the Rose Companies advise the United States that they have completed one or more of the required retrofits or modifications.  The inspections shall be carried out in accordance with a written protocol separately agreed to by the Rose Companies and the United States (the "Inspection Protocol") which shall be provided to the Inspector.

(a)    The Inspectors shall set out the results of each inspection, including deficits, if any, in writing and shall send that report to counsel for the United States and the Rose Companies.

(b)    Subsequent inspections will occur if the Inspector determines, in good faith, that not all of the required modifications have been made as specified in Appendices C-1 through C-41.  The Rose Companies shall correct any deficiencies within a reasonable period of time as determined by the Inspector, and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected. This process shall continue until the Inspector certifies that all of the required modifications have been made.    Upon certification by the Inspector that a modification is satisfactory, the Rose Companies shall be released from any further obligations under this Consent Order with respect to that modification.  The Rose

19

Companies shall pay all of the Inspectors' costs and fees associated with these inspections, and such payments shall be made without regard to the Inspectors' findings. Any disputes between the United States and the Rose Companies as to the Inspectors' findings and what corrective actions are necessary shall be subject to the dispute resolution procedure set forth in Section XIII(C) below.

(c)    Unless otherwise agreed between the Rose Companies and the United States, the Rose Companies shall give the United States at least three (3) weeks notice of inspections in the first year and two (2) weeks notice thereafter, of the inspections described in this Section and shall give the United States an opportunity to have a representative present for such inspections.

## VI.    SURVEYING OF COMPLEXES AND BUILDINGS NOT INSPECTED BY THE UNITED STATES

35.    The United States did not inspect seven (7) of the forty-nine (49) Subject Properties. Additionally, the Rose Companies have constructed new buildings at certain of the remaining Subject Properties since the United States' inspection. The Subject Properties or portions thereof that the United States has not inspected are listed in Appendix E. The surveys shall be carried out in accordance with the provisions of this Section and the Inspection Protocol referenced in Section V.

36.    The Rose Companies agree to take the following actions with regard to the Subject Properties or portions thereof listed in Appendix E:

(a)    Arrange to have one or more qualified architectural firms ("Surveyors"), approved by the United States, whose approval shall not be withheld unreasonably, conduct on-site surveys to determine whether the Subject Properties or portions thereof listed

20

in Appendix E comply with the Fair Housing Act, and, where applicable, the ADA, within twelve (12) months of the date of entry of this Consent Order;

(b)     The Surveyor will prepare a report specifying the scope, methodology and results of the surveys, as well as recommended retrofits deemed necessary by the Surveyor for compliance with the accessibility provisions of the Fair Housing Act, and, where applicable, the ADA (hereinafter the "Report(s)");

(c)     The Surveyor will send the Report(s) to counsel for the United States and the Rose Companies as soon as practical following the survey but in any event no later than ninety (90) days from the date of the survey;

(d)     The United States and the Rose Companies shall have sixty (60) days following receipt of a Surveyor's Report to reach agreement on the retrofits to be performed at each surveyed property and the time frames for completing the retrofits.   The retrofits made shall be consistent with those made in Appendices C-1 through C-41. If the United States and the Rose Companies cannot reach agreement on the retrofits to be performed, the matter shall be resolved in accordance with the dispute resolution procedure set forth in Section XIII(C) below;

(e)     The procedure for inspection and certification of the retrofits performed and the procedure for compensating tenants dislocated by such retrofits to their units will be consistent with those set forth in Sections IV and V of this Consent Order;

(f)     Upon certification by an Inspector that a required modification has been satisfactorily completed, the Rose Companies shall be released from any further obligations under this Consent Order with respect to that modification; and

21

(g)     For those buildings listed in Appendix E that the Rose Companies have any ownership or management interest in at the time any agreed retrofits are made, they may not charge any additional rent, deposit, or other fee for a unit in which retrofits are implemented solely because of the contemplated or completed retrofits.

## VII.     SALE OR TRANSFER OF OWNERSHIP INTEREST

37.     The sale or transfer of ownership, in whole or in part, of any the Subject Properties, shall not affect the Rose Companies' continuing obligation to modify the Subject Properties as specified in this Consent Order.  Should the Rose Companies decide to sell or transfer any ownership interest in any of the Subject Properties before completion of the retrofits specified in this Consent Order with respect to the property to be sold or transferred, the Rose Companies shall, at their option, either (i) complete the retrofits (including the inspection procedure set forth in Section V) for such property prior to completion of the sale or transfer; or (ii) at least thirty (30) days prior to completion of the sale or transfer:

(a)     provide to each prospective buyer written notice that the Subject Properties are subject to this Consent Order, including specifically the Rose Companies' obligations to complete required retrofit work and to allow inspections, along with a copy of this Consent Order; and

(b)     provide the United States, by facsimile and first class U.S. mail, written notice of its intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address, and telephone number.

22

## VIII. SETTLEMENT FUNDS FOR ALLEGED AGGRIEVED PERSONS

### A. Establishment of Settlement Fund

38.     Within thirty (30) days after the date of entry of this Consent Order, the Defendants shall deposit in an interest-bearing escrow account administered by counsel for the Rose Companies at Honigman Miller Schwartz and Cohn LLP, the total sum of $950,000 for the purpose of paying settlement amounts to individuals alleged by the United States to qualify as "aggrieved persons." This money shall be referred to herein as "the Settlement Fund." Any interest accruing in the Settlement Fund shall become a part of the Settlement Fund and shall be utilized as set forth in this Consent Order. Nothing in this Consent Order, including the establishment of the Settlement Fund, shall be construed as an admission of liability to any person or entity.

### B. Notice to the Public of Settlement Fund

39.     Within ninety (90) days following the entry of this Consent Order the Rose Companies shall disseminate the notice attached hereto as Appendix K ("Notice") in each geographical rental market in which the Subject Properties are located. For each geographic rental market, the Rose Companies shall disseminate the notice as follows:

a.     By sending the Notice, by first class mail, to each current tenant who lives in a Covered Dwelling Unit at the Subject Properties. Within thirty (30) days of each such service of the Notice, the Rose Companies shall provide to Counsel for the United States proof that the Notice has been sent along with a list of the recipients. AND

b.     By doing at least one of the following, and informing the United States in writing, of the dissemination in accordance with the provisions set forth in Paragraph 54(d) below:

23

        i.       Disseminate the Notice to disability advocacy groups, selected by the Rose Companies and approved by the United States (whose approval shall not be unreasonably withheld) operating in a geographic rental market in which the Subject Property is located. The Rose Companies shall make reasonable efforts to ensure that the Notices are distributed to each group's entire membership list in the rental market area and shall provide the necessary copies, mailing costs, and other fees associated with such membership dissemination. OR

        ii.      Publish the Notice on three (3) occasions in the news section of the newspaper with the largest circulation in the relevant geographic market area. The Notice shall be no smaller than three columns by six inches. The publication dates shall be separated from one another by at least twenty-one (21) days, and at least two (2) of the publication dates shall be a Sunday. Within ten (10) days of each publication date, the Rose Companies shall provide the newspaper containing the Notice to counsel for the United States.

**C.**     **United States' Efforts to Locate Potential Aggrieved Persons**

40.     No provision in this Consent Order shall be construed to preclude or in any way limit any efforts the United States may make to locate aggrieved persons.

**D.**     **Identification of Aggrieved Persons**

41.     Alleged aggrieved persons shall have one (1) year after the date of entry of this Consent Order to contact the United States in response to any Notice the person received. Upon the Rose Companies' request, the United States shall provide a copy of any responses it receives

pursuant to the Notice, together with any supporting documentation the individual provides. The United States shall investigate the claims of alleged aggrieved persons, and, within fifteen (15) months after the date of entry of this Consent Order, shall make a preliminary determination of which persons it recommends be allowed to participate in the Settlement Fund and an appropriate amount that should be paid to each such person from the Settlement Fund. The United States will inform the Rose Companies, in writing, of its preliminary determinations, together with a copy of a sworn declaration from each alleged aggrieved person setting forth the factual basis of his or her claim. The Rose Companies shall have sixty (60) days to review the preliminary determinations and the declarations and, if they choose, provide to the United States any documents or information that they believe should affect the claim.

### E.  **Payments to Alleged Aggrieved Persons**

42.    After receiving and considering the Rose Companies' documents and information, if any, the United States shall submit its final recommendations to the Court for approval, identifying the alleged aggrieved persons and an appropriate portion of the Settlement Fund that should be paid to each person, together with a copy of the declarations. The Rose Companies may, likewise, submit any additional information they wish the Court to consider in determining whether any person who responded to the Notice should be permitted to participate in the Settlement Fund and the amount the alleged aggrieved person should receive. Within twenty-one (21) days after the entry of a final Order approving or changing the United States' proposed distribution of funds to alleged aggrieved persons, counsel for the Rose Companies at Honigman Miller Schwartz and Cohn LLP shall deliver to the United States checks payable to the alleged aggrieved persons in the amounts approved. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund, including accrued interest. No alleged aggrieved person shall be paid until s/he

has executed and delivered to counsel for the United States, the Rose Companies, and the Architectural Defendant for the Subject Property a full release of the Rose Companies and the Architectural Defendant for the Subject Property in the form attached hereto as Appendix L.

### F. Remainder

43.     In the event that less than the total amount in the Settlement Fund, including accrued interest, is distributed to alleged aggrieved persons, the Rose Companies shall make a proposal to the Court regarding distribution of the remainder of the fund for the purpose of providing housing for disabled persons in areas where the Subject Properties are located. Once an Order concerning the proposed distribution of funds is entered, the Rose Companies shall undertake to distribute the funds in a manner consistent with the Order as soon as reasonably possible thereafter.

## IX.     CIVIL PENALTY

44.     Without admitting liability, the Defendants shall pay the total sum of $110,000 to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i). Said sum shall be paid within thirty (30) days after the date of entry of this Consent Order by submitting a check made payable to the United States of America to Counsel for the United States.

## X.     ACKNOWLEDGMENTS AND TRAINING

45.     Within one hundred eighty (180) days after the entry of this Order, the Rose Companies and each of the Architectural Defendants shall provide a summary of this Order, as set forth in Appendix M to all their managers and supervisors involved in the design, construction or the rental of Covered Dwelling Units at the Subject Properties, and secure a signed statement from each manager or supervisor acknowledging that he or she has received, read and understands the summary of this Order.

46.     Within ninety (90) days after the date he or she commences an agency or employment with the Rose Companies and each of the Architectural Defendants, each new manager or supervisor involved in the design, construction or with the rental of Covered Dwelling Units at the Subject Properties shall be given a summary of this Order, as approved by the Parties, and be required to sign a statement acknowledging that he or she has received, read and understands the summary of this Order.

47.     Within two hundred ten (210) days after the entry of this Order, the Rose Companies and each of the Architectural Defendants shall provide fair housing training, with a focus on disability issues, to all their managers and supervisors involved in the design, construction or rental of Covered Dwelling Units at the Subject Properties. The training shall be conducted by a qualified person or organization approved by the United States. The Rose Companies and the Architectural Defendants shall pay all fair housing training costs. Within two hundred forty (240) days after the entry of this Order, the Rose Companies and each of the Architectural Defendants shall secure and deliver to counsel for the United States a written certification of each manager's and supervisor's attendance at the fair housing training.

48.     Each new manager or supervisor involved in the design or construction of covered dwelling or the rental of Covered Dwelling Units at the Subject Properties shall attend fair housing training, with a focus on disability issues within ninety (90) days after the date he or she commences an agency or employment relationship with the Rose Companies or any of Architectural Defendants, or as soon thereafter as such training may be available. The Rose Companies and the Architectural Defendants shall pay all fair housing training costs for new managers or supervisors.

49.     Attached at Appendix N is a list of positions/employees to which the provisions of Paragraphs 45-48 shall apply.

## XI.     PUBLIC NOTICE OF NON-DISCRIMINATION POLICY

50.     Within ten (10) days after the date of entry of this Consent Order, the Rose Companies shall post and prominently display in the rental offices of all covered multifamily dwellings owned and/or operated by them, including the Subject Properties, a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

51.     In all future advertising in newspapers and on pamphlets, brochures and other promotional literature regarding any existing or any new covered multifamily dwellings that the Rose Companies may develop or construct, the Rose Companies shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act or, if appropriate to the size of the advertising, the universal symbol of accessibility.

## XII.    REPORTING AND DOCUMENT RETENTION REQUIREMENTS

### A.     Complaints

52.     The Rose Companies shall advise the United States in writing within fifteen (15) days after receipt of any written fair housing complaint (whether filed administratively with HUD or another governmental agency or in court or submitted in writing to the Rose Companies) against any property owned or managed, or against any employee or agent of the Rose Companies working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, the Rose Companies shall also provide the United States with all non-privileged information it may request concerning any such complaint. The Rose Companies shall also advise

28

counsel for the United States, in writing, within fifteen (15) days after the resolution of any complaint.

### B. Records

53. The Defendants shall preserve all records related to the inspections, modifications (including requests for additional accessibility features in specified units, pursuant to IV(C) of this Consent Order, or "on request" accessibility enhancements, and responses thereto, pursuant to Section IV(D) of this Consent Order, or where required by Appendices C1-C41), acknowledgments, and training ordered by this Consent Order for all covered multifamily dwellings designed, constructed, owned, operated, or acquired by them, including the Subject Properties. Upon reasonable notice to Defendants and their attorneys, representatives of the United States shall be permitted to inspect and copy any non-privileged records of Defendants related to this Consent Order.

### C. Reporting

54. Within six (6) months following the date of entry of this Consent Order, where applicable, the Defendants shall serve upon counsel for the United States an initial report containing:

(a) Copies of the acknowledgment forms signed by any and all employees and agents pursuant to Section X of this Consent Order;

(b) Copies of certification of attendance for fair housing educational programs pursuant to Section X of this Consent Order (to the extent such training has been completed); and

(c) Information and/or statements related to current construction pursuant to Section III of this Consent Order

29

(d)     Copies of all Notices disseminated pursuant to Section VIII(B) of this Consent Order.

55.     Thereafter, the Defendants shall, where applicable, on the anniversary of the date of entry of this Consent Order, except for the final report, which will be provided thirty (30) days before the five (5) year anniversary, submit to the United States a report containing:

(a)     Copies of the acknowledgment forms signed by any and all new employees and agents pursuant to Section X of this Consent Order;

(b)     Copies of certification of attendance for fair housing educational programs for any and all new employees and agents pursuant to Section X of this Consent Order;

(c)     Information and/or statements related to current construction pursuant to Section III of this Consent Order.[10]

## XIII.     MISCELLANEOUS

### A.     Duration and Scope of Consent Order

56.     This Consent Order shall remain in effect for five (5) years after the date of its entry.

57.     Except as otherwise expressly stated in Paragraph 6, no obligations set forth in this Consent Order shall extend beyond the date that the Consent Order ceases to be effective. The Rose Companies, however, shall be required to comply with any requests made pursuant to Paragraphs 18, 20, 21, 23, 26 and 29, or pursuant to one of the "on request" items in Appendices C(1) to C(41), that are submitted to them prior to the date that the Consent Order ceases to be effective even if the modifications requested have not been completed by such date.

---

[10]   The reporting requirements of paragraphs 54 and 55 of this Consent Order shall apply to Defendants Saule and Peterson only to the extent that they engage or participate, in any way, in the design or construction of covered multifamily dwellings.

**B.**     **Retained Jurisdiction to Enforce Consent Order**

58.     This Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of this Order in accordance with Paragraphs 59 and 60 below.  Any party may move the Court to extend the duration of this Order in the interests of justice.

**C.**     **Dispute Resolution**

59.     The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  In the event the Parties cannot resolve their differences informally, any party may move the Court for an order compelling compliance with the Consent Order and for attorney's fees and costs.  Any such motion shall be titled "Motion to Compel Performance Under Consent Order."  Nothing in this Paragraph shall prevent a party, in appropriate circumstances and for good cause shown, from moving the Court to impose any other remedy authorized by law or equity to enforce the provisions of this Consent Order.

60.     Pursuant to and subject to the provisions of Fed. R. Civ. P. 73, 28 U.S.C. § 636(c), and Local Rule 73.1, the Court hereby refers all matters and proceedings regarding enforcement of this Consent Order to Magistrate Judge Donald A. Scheer.  An executed Notice of Consent to have the Magistrate Judge conduct all proceedings is attached hereto as Appendix O.  In the event that Magistrate Scheer is unable to perform the duties referred under this Paragraph, the parties consent to, and the Court shall refer all matters and proceedings regarding enforcement of this Consent Order to another Magistrate Judge to be selected by the random selection process established by the United States District Court for the Eastern District of Michigan.

**D.     Time for Performance**

61.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Defendants.   Any party may move the Court to extend the time limits for performance in the interests of justice.

**E.     Costs of Litigation**

62.     Each party to these actions will bear its own costs and attorneys' fees associated with this litigation.

**F.     Limitation of Liability**

63.     Nothing in this Consent Order shall be read as an admission of liability by the Defendants under the Fair Housing Act or the ADA.

**G.     Notice**

64.     Unless otherwise specified in this Consent Order, all documents or other communications required by this Consent Order to be sent to the United States or counsel for the United States shall be sent via first class U.S. mail, addressed as follows:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Ave. NW Building, G St., Washington, D.C. 20530.  Attn: DJ No. 175-37-302, except that notice of inspections pursuant to Sections V and VI shall also be sent by fax or email to counsel of record for the United States.

65.     Unless otherwise specified in this Consent Order, and until further notice, all documents or other communications required by this Consent Order to be sent to the Rose Companies or counsel for the Rose Companies shall be sent via first class U.S. mail to: (a) Patrick Duerr, Honigman Miller Schwartz and Cohn LLP, 2290 First National Building, 660 Woodward

32

Avenue, Detroit, MI 48226 and (b) John O'Hara, 30057 Orchard Lake Road, Suite 100, Farmington Hills, MI 48334.

### H. Return of Confidential Information

66.     In accordance with the Amended Protective Order Related to Tenant Information, within six (6) months following the entry of the Court Order distributing Settlement Funds in accordance with Section VIII(E), above, all Parties shall either return to the Rose Companies or destroy or otherwise dispose of all confidential tenant information as well as any copies, compilations, or summaries of such confidential information ("Confidential Tenant Information"). Any party electing to destroy or otherwise dispose of Confidential Tenant Information shall provide certification to the Rose Companies that such destruction is complete within thirty (30) days of the date of destruction.

67.     In accordance with the Protective Order Related to Financial Information, within six (6) months of the date of entry of this Consent Order all confidential financial information produced by the Rose Companies to the United States shall be returned to the Rose Companies, by forwarding same to general counsel for Rose, John O'Hara, 30057 Orchard Lake Road, Suite 100, Farmington Hills, MI 48334. In addition, the United States shall destroy any copies, compilations, or summaries of such confidential financial information, including, but not limited, to copies of the transcript of the deposition of Rodney Lorne Crawford, C.P.A. and any confidential financial information the United States provided to Mr. Crawford, and any opinions or reports drafted by Mr. Crawford (whether in draft or final form). The United States shall provide certification to the Rose Companies that such destruction is complete within (30) days of the date of destruction.

SO ORDERED this 30th day of September, 2005.

_____
UNITED STATES DISTRICT COURT JUDGE

A TRUE COPY
CLERK, US DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BY _____
DEPUTY CLERK

33

The undersigned hereby apply for and consent to the entry of this Consent Order:

For the United States
BRADLEY J. SCHLOZMAN
Acting Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

Steven H. Rosenbaum, Chief
Timothy J. Moran, Deputy Chief
Ming-Yuen Meyer-Fong
Sean Keveney
Joseph Gaeta
Erin Meehan Richmond
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwest Building - G Street
Washington, D.C. 20530
Tel: (202) 514-4713
Fax: (202) 514-1116

STEPHEN J. MURPHY, III
United States Attorney
Eastern District of Michigan

Judith E. Levy
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Tel: (313) 226-9100
Fax: (313) 226-2311

For the Rose Companies

_____

John O'Hara
General Counsel
Edward Rose & Sons
30057 Orchard Lake Road, Suite 100
Farmington Hills, MI 48334
Tel: (248) 539-2255
Fax: (248) 539-2135

The undersigned hereby apply for and consent to the entry of this Consent Order:

For the United States
BRADLEY J. SCHLOZMAN
Acting Assistant Attorney General
Civil Rights Division
U.S. Department of Justice


Steven H. Rosenbaum, Chief
Timothy J. Moran, Deputy Chief
Ming-Yuen Meyer-Fong
Sean Keveney
Joseph Gaeta
Erin Meehan Richmond
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwest Building - G Street
Washington, D.C. 20530
Tel: (202) 514-4713
Fax: (202) 514-1116

STEPHEN J. MURPHY, III
United States Attorney
Eastern District of Michigan


Judith E. Levy
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Tel: (313) 226-9100
Fax: (313) 226-2311

For the Rose Companies


John O'Hara
General Counsel
Edward Rose & Sons
30057 Orchard Lake Road, Suite 100
Farmington Hills, MI 48334
Tel: (248) 539-2255
Fax: (248) 539-2135



Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
   Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760

Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.

Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Eckert/Wordell Architects P.C.

Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760

Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
    Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760

Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.

Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Eckert/Wordell Architects P.C.

Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760

Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

35

Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
   Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760


Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.

For Eckert/Wordell Architects P.C.


Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760

Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
    Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000


Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.


Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760


Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Eckert/Wordell Architects P.C.


Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
    Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760

Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.

Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Eckert/Wordell Architects P.C.

Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760


For SSOE, Inc., James R. Saule, and Gerald
Peterson

Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

Drew F. Seaman

35

Patrick T. Duerr
Norman C. Ankers
Ann L. Andrews
Brigham C. Smith
Honigman Miller Schwartz and
   Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (313) 465-8000

Andrew L. Sandler
Jennifer L. Spaziano
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel: (202) 371-7000
Fax: (202) 393-5760

Joseph R. Fullenkamp
Timothy J. Maher
Barnes & Thornburg LLP
600 First Source Bank Center
100 North Michigan Street
South Bend, IN 46601
Tel: (574) 233-1171
Fax: (574) 237-1125

Christopher B. Hanback
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801
Tel: (202) 955-3000
Fax: (202) 955-5564

For Dorchen/Martin Associates, Inc. and
Alexander V. Bogaerts & Associates P.C.

For Eckert/Wordell Architects P.C.

Kevin Gleeson
Sheri B. Cataldo
Sullivan, Ward, Asher & Patton, P.C.
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Tel: (248) 746-0700
Fax: (248) 746-2760

Garry L. Walton
229 East Michigan Avenue
Suite 445
Kalamazoo, MI 49007
Tel: (269) 383-3434
Fax: (269) 383-2997

35

For SSOE, Inc., James R. Saule, and Gerald
Peterson

Drew F. Seaman
Straub, Seaman & Allen, P.C.
1014 Main Street
St. Joseph, MI 49085
Tel: (269) 982-1600
Fax: (269) 982-1694

36

## APPENDIX A

### Subject Properties

(1)     Arbor Lakes Apartments, located at 22538 Pine Arbor Drive, Elkhart, Indiana 46516.

(2)     Autumn Lakes Apartments, located at 1109 Hidden Lakes Drive, Mishawaka, Indiana 46544.

(3)     Brentwood Park Apartments, located at 10736 Brentwood Drive, LaVista, Nebraska 68128.

(4)     Byron Lakes Apartments, located at 7000 Byron Lakes Drive, Byron Center, Michigan 49315.

(5)     Canal Club Apartments, located at 7715 Streamwood Drive, Lansing, Michigan 48917.

(6)     Canal 2, 7606 Briarbrook Drive, Lansing, Michigan 48917.

(7)     The Crossings Apartments, located at 1414 Eastport Drive, S.E., Grand Rapids, Michigan 49508.

(8)     Dupont Lakes Apartments, located at 3302 Vantage Point Drive, Ft. Wayne, Indiana 46825.

(9)     Foxwood Apartments, located at 4805 Fox Valley Drive, Portage, Michigan 49024.

(10)    Glenn Valley Apartments, located at 5255 Glenn Valley Drive, Battle Creek, Michigan 49015.

(11)    Green Ridge Apartments, located at 3359 Ridgeview Drive, Grand Rapids, Michigan 49544.

(12)    Gull Prairie Apartments, located at 4350 Gull Prairie Drive, Kalamazoo, Michigan 49048.

(13)    Gull Run Apartments, located at 4495 Gull Run Drive, Kalamazoo, Michigan 49048.

(14)    The Harbours Apartments, located at 44530 Bayview Avenue, Clinton Township, Michigan 48038.

(15)    Heatherwood Apartments, located at 1275 Heatherwood Drive, Grand Blanc, Michigan 48439.

(16)    The Hermitage, located at 4805 Fox Valley Drive, Portage, Michigan 49025.

(17)    The Highlands Apartments, located at 2641 Muirfield Drive, Elkhart, Indiana 46514.

(18)   Huntington Cove Apartments, located at 2040 East 84th Street, Merrillville, Indiana 46410.

(19)   Hurwich Farms Apartments, located at 2701 Appaloosa Lane, South Bend, Indiana 46628.

(20)   Indian Lakes Apartments, located at 5726 Seneca Drive, Mishawaka, Indiana 46545.

(21)   Lake Pointe Apartments, located at 4396 Long Lake Road, Batavia, Ohio 45103.

(22)   Latitudes Apartments, located at 8940 Latitudes Drive, Indianapolis, Indiana 46237.

(23)   Liberty Mills Apartments, located at 6101 Cornwallis Drive, Ft. Wayne, Indiana 46804.

(24)   Mallard Bay Apartments, located at 9310 Monroe Street, Crown Point, Indiana 46307.

(25)   North Pointe Apartments, located at 3330 North Pointe Blvd., Elkhart, Indiana 46514.

(26)   Northport Apartments, located at 45081 Northport Drive, Macomb, Michigan 48044.

(27)   Oak Shore Apartments, located at 2325 West Briar Lake Way, Oak Creek, Wisconsin 53154.

(28)   Orchard Lakes Apartments, located at 2161 Orchard Lakes Place East, Toledo, Ohio 43615.

(29)   Pheasant Run Apartments, located at 3090 Pheasant Run Drive, Lafayette, Indiana 47909.

(30)   Pine Knoll Apartments, located at 115 Pine Knoll Drive, Battle Creek, Michigan 49014.

(31)   Polo Run Apartments, located at 800 Kings Mill Road, Greenwood, Indiana 46142.

(32)   Portsmouth Apartments, located at 31170 Wellington Drive, Novi, Michigan 48377.

(33)   Prairie Lakes Apartments, located at 1500 W. Blue Sage Drive, Peoria, Illinois 61615.

(34)   South Bridge Apartments, located at 8310 Bridgeway Blvd., Ft. Wayne, Indiana 46816.

(35)   Southport Apartments, located at 10830 Oak Lane, Bellville, Michigan 48111.

(36)   The Springs II Apartments, located at 30995 Springlake Blvd., Novi, Michigan 48377.

(37)   Sundance at the Crossings Apartments, located at 7213 Sundance Drive, Indianapolis, Indiana 46237.

(38)   Sunscape Apartments, located at 3635 Sunscape Drive, Roanoke, Virginia 24018.

2

(39) Swiss Valley Apartments, located at 3001 Burlingame Avenue, S.W., Wyoming, Michigan 49509.

(40) Tanglewood Apartments, located at 9200 South Meyer Lane, Oak Creek, Wisconsin 53154.

(41) Thornridge Apartments, located at 1000 Thornridge Drive, Grand Blanc, Michigan 48439.

(42) Timberlane Apartments, located at 5901 North War Memorial Drive, Peoria, Illinois 61615.

(43) Towne Lakes Apartments, located at 4033 Towne Lakes Ave., Grand Chute, Wisconsin 54913.

(44) Tracy Creek Apartments, located at 7043 Tracy Creek Drive #1A, Perrysburg, Ohio 43551.

(45) Trophy Club at Bellgrade Apartments, located at 2301 Thoroughbred Circle, Midlothian, Virginia 23113.

(46) Waterfront Apartments, located at 1431 Bayhead Drive, Virginia Beach, Virginia 23453.

(47) West Hampton Park Apartments, located at 19205 Costanzo Plaza #1A, Elkhorn, Nebraska 68022.

(48) Westlake Apartments, located at 1102 Westlake Circle, Belleville, Michigan 48111.

(49) Windmill Lakes Apartments, located at 2900 Millpond Drive, West Holland, Michigan 49424.

## APPENDIX B

### Retrofit Schedule

The Rose Companies shall complete public and common use area retrofits, interior retrofits, and additionally accessible units according to the following schedule, provided however that the time for completion may be extended pursuant to Section XIII.D of the Consent Order.

## PUBLIC AND COMMON USE AREAS
## (Parts II and III of Appendices C-1 through C-42)

**Farmington Hills Office:**  Community buildings to be 100% complete within 6 months after the date of entry of the Consent Order.  Dual walkways and all other public and common use areas other than slopes to be completed within 17 months of entry of the Consent Order.  Slopes to be completed on the following schedule: (1) 50% complete within 20 months after the date of entry of the Consent Order, (2) 100% complete within 28 months.  Rose Companies to provide United States with planned schedule in advance for comment.  Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the office.

**Indianapolis Office:**   Community buildings to be 100% complete within 12 months after the date of entry of the Consent Order.  Dual walkways and all other public and common use areas other than slopes to be completed within 15 months of entry of the Consent Order.  Slopes to be completed on the following schedule: (1) 50% complete within 21 months after the date of entry of the Consent Order, (2) 100% complete within 30 months.  Rose Companies to provide United States with planned schedule in advance for comment.  Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the office.

**Kalamazoo and Flint Offices:**  Community buildings to be 100% complete within 15 months after the date of entry of the Consent Order.  Dual walkways and all other public and common use areas other than slopes to be completed within 30 months of entry of the Consent Order.  Slopes to be completed on the following schedule: (1) 50% complete with 18 months after the date of entry of the Consent Order, (2) 100% complete within 30 months.   Rose Companies to provide United States with planned schedule in advance for comment.   Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the two offices.

## INTERIOR RETROFITS
### (Part IV of Appendices C-1 through C-42)

**Farmington Hills Office:** Retrofits to be completed on the following schedule: (1) 50% of units complete within 12 months after the date of entry of the Consent Order, (2) 75% of units complete within 21 months, (3) 100% of units complete within 28 months. Rose Companies to provide United States with planned schedule in advance for comment. Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the office.

**Indianapolis Office:** Retrofits to be completed on the following schedule: (1) 30% of units complete within 12 months after the date of entry of the Consent Order, (2) 55% of units complete within 24 months, (3) 80% of units complete within 36 months, (4) 100% of units complete within 48 months. Rose Companies to provide United States with planned schedule in advance for comment. Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the office.

**Kalamazoo and Flint Offices:** Retrofits to be completed on the following schedule (1) 20% of units complete within 12 months after the date of entry of the Consent Order, (2) 40% of units complete within 24 months, (3) 60% of units complete within 36 months, (4) 80% of units complete within 48 months, (5) 100% of units complete within 58 months. Rose Companies to provide United States with planned schedule in advance for comment. Such schedule shall ensure that the corrections performed are reasonably distributed throughout the complexes managed by the office.

## ADDITIONALLY ACCESSIBLE UNITS
### (Part V of Appendices C-1 through C-42)

**Farmington Hills Office:** Retrofits of 100% of the additionally accessible units to be complete within 12 months after the date of entry of the Consent Order, except for Buildings 6, 7 and 8 at Lake Pointe, which will be completed as the construction of the buildings are completed.

**Indianapolis Office:** Additionally accessible units to be retrofitted or constructed on following schedule: (1) 40% of additionally accessible units to be complete within 12 months after the date of entry of the Consent Order, (2) 75% of additionally accessible units to be complete within 24 months, (3) 100% of additionally accessible units to be complete within 36 months.

**Kalamazoo Office:** Additionally accessible units to be retrofitted or constructed on following schedule: (1) 40% of additionally accessible units to be complete within 12 months after the date of entry of the Consent Order, (2) 66⅔% of additionally accessible units to be complete within 24 months, (3) 100% of additionally accessible units to be complete within 36 months.

2

**Flint Office:**   Retrofits of additionally accessible units to be 100% complete within 15 months after the date of entry of the Consent Order.